IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREG SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-15-1126-D |
| ) | |
| STANDARD INSURANCE COMPANY, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

# **O R D E R**

Before the Court is Plaintiff's Motion for Summary Judgment Against Standard Insurance Company on His Second Claim for Relief [Doc. No. 37], filed pursuant to Fed. R. Civ. P. 56. Both Defendant Standard Insurance Company ("Standard") and Defendant Carlisle Corporation ("Carlisle") have responded to the Motion, which is fully briefed.[1]

## **Factual and Procedural Background**

Plaintiff Greg Smith is the surviving spouse of Cheryl Smith, who was employed before her death by a subsidiary of Carlisle. Plaintiff brought suit in the District Court of Oklahoma County, Oklahoma, against Carlisle and its insurer, Standard, to recover life insurance benefits allegedly due under an employee benefit plan sponsored by Carlisle and funded by a group life insurance policy issued by Standard (the "Policy"). Defendants

---

[1] Standard opposes the Motion; Carlisle generally supports it but argues additional matters not raised by Plaintiff. Carlisle's response drew a motion by Standard, asking the Court either to strike Carlisle's brief or to permit a reply. The motion was denied by a prior order. *See* 9/29/17 Order [Doc. No. 50]. Plaintiff has filed a reply brief that addresses only Standard's response.

timely removed the case to federal court based on jurisdiction under 28 U.S.C. § 1331 due to claims arising under the Employee Retirement Income Security Act of 1974 (ERISA"), 29 U.S.C. § 1001 *et seq*.

The case concerns Standard's decision, as the claims administrator, to pay only the basic life insurance coverage benefit provided by the Policy for all eligible employees and to deny an additional coverage benefit that employees could elect to purchase under the terms of the Policy. By agreement of the parties, Plaintiff's claims have been bifurcated, and the first phase of the case is limited to a ruling on the "Second Claim for Relief" in his pleading. *See* Sched. Order [Doc. No. 34]; Pet. [Doc. No. 1-2], p.13. By this claim, Plaintiff asserts that he is entitled to recover the additional life insurance benefit provided by the Policy due to an "Incontestability Clause." Standard refused to pay the benefit on the ground that Mrs. Smith did not effectively enroll in the additional coverage. Plaintiff claims, however, that Standard is precluded from relying on any flaw in the enrollment process because the Incontestability Clause applies and "renders Plaintiff's claim [for benefits] incontestable for any reason other than non-payment of premiums." *See* Pet. [Doc. No. 1-2], ¶ 39. By the instant Motion, Plaintiff seeks a summary adjudication of this "Incontestability Claim" in his favor as a matter of law.

**Standard of Decision**

Although Plaintiff has moved for summary judgment, Rule 56 plays a limited role in an ERISA case. "[S]ummary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in his favor."

*LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (internal quotation omitted); *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1201 (10th Cir. 2013).

Plaintiff concedes that the ERISA plan and the Policy gave Standard discretionary authority to decide claims for benefits and interpret the Policy and, thus, judicial review of Standard's benefit decision is generally governed by a deferential arbitrary-and-capricious standard of review. *See* Pl.'s Mot. Summ. J. [Doc. No. 37] at 5-6. Plaintiff argues, however, that Standard's determination that the Incontestability Clause does not apply to Plaintiff's claim "is a pure legal conclusion" and that legal conclusions are subject to *de novo* review. *Id*. at 6 (emphasis omitted). Plaintiff provides no controlling legal authority for this argument but relies primarily on federal appellate court decisions from other circuits.

In the Court's view, the applicability of the Incontestability Clause under the circumstances requires an interpretation of the Policy and not merely a legal ruling, as discussed *infra*. The law of the Tenth Circuit is clear: "Under [ERISA's] arbitrary-and-capricious standard, our review is limited to determining whether the interpretation of the plan was reasonable and made in good faith." *LaAsmar*, 605 F.3d at 796 (internal quotation omitted); *Cardoza*, 708 F.3d at 1201.[2] Thus, the Court's task in reviewing Standard's benefit decision is to determine whether Standard's conclusion that the Incontestability Clause did not apply "is predicated on a reasoned basis." *See Graham v. Hartford Life & Accident Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009) (internal quotation omitted). If

---

[2] In this case, Plaintiff does not contend Standard failed to act in good faith.

Plaintiff demonstrates a mistake of law, however, this is one "indicia of an arbitrary and capricious denial of benefits." *Cardoza*, 708 F.3d at 1201-02; *Graham*, 589 F.3d at 1357; *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002).

## Undisputed Facts

The Policy was part of an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. § 1002(1), that was maintained by Carlisle to provide life insurance benefits for salaried, fulltime employees of Carlisle and its subsidiaries. The Policy funded the life insurance benefits provided by the plan beginning January 1, 2012. Carlisle was the policyholder and the ERISA plan administrator. Standard was the insurer and the claims administrator for the plan. The Policy provided two types of insurance coverage to eligible employees: a) non-contributory, "Plan 1" or "basic life" coverage; and b) contributory, "Plan 2" or "additional life" coverage. This case concerns only the latter type of coverage.

Mrs. Smith was a salaried, fulltime employee of Carlisle Food Service Products, Inc., a wholly owned subsidiary of Carlisle, before her death in 2014. During open season for the 2012 plan year (the time period during which eligible employees could make changes in elected coverage), Mrs. Smith made the election to enroll in additional life coverage by submitting an application for insurance in the amount of three times her annual earnings, and agreeing to a payroll deduction for premium payments. Carlisle processed Mrs. Smith's application and, from January 2012 until her death (a period of 33 months), deducted the amount of the required premium payments from her paychecks and remitted the payments to Standard. Mrs. Smith died September 23, 2014.

Plaintiff was Mrs. Smith's spouse and the designated beneficiary of all her life insurance coverage. After her death, he timely submitted a claim for payment of both types of life insurance benefits. Standard promptly paid Plaintiff the basic life benefit provided by the Policy in the amount of $88,000.00 on November 12, 2014, but later denied the additional life benefit that Mrs. Smith had elected and paid for during her employment. Standard investigated the claim for additional life coverage and, by letter dated February 26, 2015, decided that Mrs. Smith's enrollment for the coverage was incomplete and ineffective because Standard had not received or approved medical evidence for her, as required by the "Evidence of Insurability" (or "EOI") provisions of the Policy. Specifically, Standard's written decision stated in pertinent part as follows:

> Under the terms of the policy, Evidence Of [sic] Insurability is required for members that were eligible but not insured under the prior plan. Therefore, this election required Cheryl Smith to complete and submit a Medical History Statement to Standard Insurance Company and gain approval from our Medical Underwriting Department before the Plan 2 Additional Life Insurance could become effective. The Standard has no record of receiving and approving medical evidence for Cheryl Smith. Therefore, the claim for $132,000 in Plan 2 (additional) Life Insurance must be denied.

Admin. R. (hereafter, "AR") 361. Under this view, the insurance premiums paid by Mrs. Smith were wrongly received, and with the letter, Standard remitted a check in the amount of $2,218.32 as a refund of premium payments.

Plaintiff refused the premium refund check and, through counsel, initiated an appeal of Standard's decision regarding the additional life benefit, as provided by the Policy and ERISA. Consistent with his Incontestability Claim in this case, Plaintiff first asserted that an absence of EOI for Mrs. Smith, as well as the question of whether the Policy required

5

EOI, were inconsequential because the Policy contained the following Incontestability Clause applicable to individual insureds:

> A. Incontestability of Insurance
>
> Any statement made to obtain or to increase insurance is a representation and not a warranty.
>
> No misrepresentation will be used to reduce or deny a claim unless:
>
> 1. The insurance would not have been approved if we had known the truth; and
>
> 2. We have given you or any other person claiming benefits a copy of the signed written instrument which contains the misrepresentation.
>
> We will not use a misrepresentation to reduce or deny a claim after the insured's insurance has been in effect for two years during the lifetime of the insured.

AR 57.[3] Within the appeal deadline, Plaintiff also asserted as an additional ground for reversal of the initial decision, that Standard had waived or was estopped to rely on any EOI requirement as a basis to deny additional life coverage.

Upon Standard's review of the benefit decision adverse to Plaintiff, Standard rejected Plaintiff's position regarding the Incontestability Clause of the Policy and upheld the initial decision, stating as follows:

> The crux of the Incontestability clause is that one's insurance has to already be in effect for two years for The Standard to not reduce, deny (or rescind) coverage due to a misrepresentation. This would only have applied to Ms. Smith's claim had she submitted Evidence of Insurability, been approved despite a misrepresentation on her part, and died after being insured for two years or more since the approval of Evidence. This did not occur,

---

[3] The ERISA plan contains a second incontestability provision that applies to the group insurance policy as a whole, which is not at issue here.

because it has been established she never filed Evidence of Insurability. Therefore your statement that the payment of premiums rendered the need for Evidence of Insurability irrelevant is not correct.

AR 141. Standard also rejected Plaintiff's waiver and estoppel arguments. In Standard's view, a failure of Carlisle to advise Mrs. Smith regarding EOI, Carlisle's collection of premiums, and any assurances to Mrs. Smith that she had additional life coverage, were encompassed by provisions of the Policy regarding "Clerical Error and Misstatement," which provided that a clerical error by Carlisle or its employees "will not . . . [c]ause a person to become insured." AR 141-42; AR 31, 145.[4]

## Discussion

**A.     Governing Law**

Plaintiff argues both that his Incontestability Claim is governed by federal common law as determined by federal courts guided by state law principles, and that it is governed by state insurance laws regarding incontestability clauses, which are saved from ERISA preemption by 29 U.S.C. § 1144(b)(2)(A). *See* Pl.'s Mot. Summ. J. [Doc. No. 37] at 17-18 (citing *Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-42 (2003)). Carlisle argues that Oklahoma insurance law – specifically, an incontestability statute applicable to group life insurance policies, Okla. Stat. tit. 36, § 4103 – applies "by operation of federal law" pursuant to "ERISA's savings clause, 29 U.S.C. § 1144(b)(2)(A)." *See* Def. Carlisle's Resp. Br. [Doc. No. 40] at 11-13 (citing *Ky. Ass'n of Health Plans v. Miller, Inc.*, 538 U.S. 329, 342 (2003), and *UNUM Life Ins. Co. v. Ward*, 526 U.S. 358, 360 (1999)). Indeed,

---

[4] The parties disagree about whether the Policy required Mrs. Smith to provide EOI and, if so, why EOI for Mrs. Smith is missing and who is at fault for its absence. The premise of Plaintiff's Motion is that these issues are immaterial to a decision of his Incontestability Claim.

Carlisle takes the position that the Oklahoma incontestability statute, which mandates the inclusion of a particular incontestability provision in group life insurance policies, controls "regardless of what the policy says" and renders Mrs. Smith's coverage incontestable. *Id.* at 11 n.9.

Standard's position is unclear; it does not specifically address what law applies to the Incontestability Claim. Standard appears to agree that Oklahoma law applies because it relies on Oklahoma case law to argue that incontestability clauses cannot create coverage (as purportedly sought by Plaintiff) and it distinguishes case authority on which Plaintiff relies as based on California law rather than Oklahoma law. *See* Def. Standard's Resp. Br. [Doc. No. 41] at 11-12, 20. Standard also argues, however, that case law from other federal courts supports its position. *Id*. at 12-14. In his reply brief, Plaintiff returns to his original statement that this is "an ERISA case where common law of ERISA derives from state law – ALL states." *See* Pl.'s Reply Br. [Doc. No. 45] at 7.

Upon consideration of the parties' positions, the Court notes that none of them provides a citation to the administrative record that would support the application of Oklahoma law, assuming Oklahoma's incontestability statute survives ERISA preemption under the savings provision of § 1129(b)(2)(A). The Policy plainly states that it was issued in North Carolina, and it is accompanied by legal notices required by North Carolina law. *See* AR 21-23, 27. The policyholder is Carlisle (AR 24), a North Carolina corporation. *See* Pet. [Doc. No. 1-2], ¶ 10. The Oklahoma Insurance Code provisions governing group life insurance policies, particularly the incontestability statute cited by Carlisle, expressly apply to insurance policies "delivered in this state." *See* Okla. Stat. tit. 36, §§ 4101, 4103.

8

Thus, the Court finds no basis in the record to support a determination that Oklahoma law regarding incontestability clauses controls the resolution of Plaintiff's Incontestability Claim.[5]

Because no party provides compelling authority on the issue of what law governs the application of incontestability clauses to life insurance benefit decisions in ERISA cases, the Court has conducted its own research but has uncovered few appellate court decisions on this issue. This authority holds that the rule of decision is provided by federal common law as developed by federal courts utilizing state law principles that are consistent with the congressional policies underlying ERISA. *See McDaniel v. Med. Life Ins. Co.*, 195 F.3d 999, 1002 (8th Cir. 1999); *see also Turner v. Safeco Life Ins. Co.*, 17 F.3d 141, 145 (6th Cir. 1994) (applying federal law; finding state incontestability statute did not apply based on its terms). Although courts have not been entirely consistent in this regard, the weight of authority, including Tenth Circuit case law, holds that federal courts fashioning ERISA law should be guided by common law principles and congressional policies rather than the law of a particular state. *See Shipley v. Ark. Blue Cross & Blue Shield*, 333 F.3d 898, 902 (8th Cir. 2003); *Alves v. Silverado Foods, Inc.*, 6 F. App'x 694, 701-02 (10th Cir. 2001) (unpublished);[6] *see also Foster v. PPG Indus., Inc.*, 693 F.3d 1226,

---

[5] The Court is aware of case law holding that an insurance policy can be constructively delivered or issued for delivery in Oklahoma if the insurer has filed a form policy with the Oklahoma Insurance Department. *See Tillman ex rel. Estate of Tillman v. Camelot Music, Inc.*, 408 F.3d 1300, 1303-04 (10th Cir. 2005). However, there is no evidence of such a filing in this case. The parties also cite no evidence that a certificate of insurance under the Policy was delivered to Mrs. Smith in Oklahoma. In fact, the parties appear to disagree about whether a certificate should have been issued and who should have issued it.

[6] Unpublished opinion cited pursuant to Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

1237 (10th Cir. 2012) ("federal common law, governed by principles of trust law, governs the interpretation of an ERISA plan") (internal quotations omitted).

**B.      Incontestability of Mrs. Smith's Insurance Coverage**

The parties' dispute regarding Plaintiff's Incontestability Claim hinges on opposite interpretations of the Incontestability Clause of the Policy.[7] Specifically, Plaintiff bases his claim for benefits on the last sentence of the provision, which states: "[Standard] will not use a misrepresentation to reduce or deny a claim after the insured's insurance has been in effect for two years during the lifetime of the insured." (AR 56.) *See* Pl.'s Mot. Summ. J. at 23.

Plaintiff argues that Mrs. Smith "became insured effective January 1, 2012," for the additional life insurance coverage in which she enrolled in December 2011, and remained covered when she died on September 23, 2014, so "Standard is barred from denying or reducing her claim." *Id*. In Plaintiff's view, the incontestability clause is triggered equally by an insured's failure to submit EOI as by an insured's submission of false EOI because an opposite reading "makes little sense;" it would "excuse express, outright, demonstrable fraud" but "not come to the aid of one guilty of mere silence where disclosure is allegedly required." *Id*. at 24.

Standard argues that "[n]o additional life insurance coverage ever went into effect" for Mrs. Smith. *See* Def. Standard's Resp. Br. at 14. Standard relies on provisions of the

---

[7] Carlisle advocates no view of the Incontestability Clause except to express agreement with Plaintiff's position. *See* Def. Carlisle's Resp. Br. at 11 n.9. As discussed *supra*, Carlisle instead relies on the Oklahoma incontestability statute to argue that Mrs. Smith's "coverage became incontestable after she had been enrolled in the Plan for two years." *Id*. at 14.

Policy regarding the effective date of coverage and the requirement that some applicants for additional life insurance were required to submit EOI. Under Standard's view, the controlling policy provision is one that states: "'Life Insurance subject to Evidence of Insurability becomes effective on the date we approve your Evidence of Insurability.'" *Id*. at 3 (quoting AR 38). By operation of these provisions, Standard takes the position that because Mrs. Smith was required to but did not submit EOI, and thus Standard never approved her EOI, "Mrs. Smith failed to satisfy the Policy requirements for obtaining additional life coverage" and it was never "in effect" for purposes of the Incontestability Clause. *Id*. at 15, 17, 18-19.[8]

In interpreting and applying the provisions of an ERISA plan, federal courts "'apply general principles of contract construction. In particular, the Supreme Court has directed us to interpret an ERISA plan like any contract, by examining its language and determining the intent of the parties to the contract.'" *Fulghum v. Embarq Corp.*, 785 F.3d 395, 403 (10th Cir. 2015) (quoting *Deboard v. Sunshine Min. & Ref. Co.*, 208 F.3d 1228, 1240 (10th

---

[8] Standard makes an additional argument that the Incontestability Clause is inapplicable according to its terms because Standard did not use a misrepresentation to deny Plaintiff's claim. Standard did not make its decision on this basis during the administrative process, and thus it cannot raise the issue now. The Tenth Circuit has made clear that a claims administrator cannot rely in litigation challenging a denial of plan benefits on a ground that it did not actually rely on in making its benefits decision. *See Spradley v. Owens-Illinois Hourly Emp. Welfare Benefit Plan*, 686 F.3d 1135, 1140-41 (10th Cir. 2012); *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 828-29 (10th Cir. 2008); *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1190 (10th Cir. 2007), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008) ("In reviewing a plan administrator's decision, we may only consider the evidence and arguments that appear in the administrative record. This means . . . we consider only the rationale asserted by the plan administrator in the administrative record . . . .") (citations omitted). According to Plaintiff, Standard also did not rely during the administrative process on the argument presented in its brief regarding the effective date of coverage. The Court disagrees.

Cir. 2000) (internal quotation omitted) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112-13 (1989)). "In interpreting an ERISA plan, the court examines the plan documents as a whole and, if unambiguous, construes them as a matter of law. In doing so, we give the language its common and ordinary meaning as a reasonable person in the position of the plan participant, not the actual participant, would have understood the words to mean." *Admin. Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 393 F.3d 1119, 1123 (10th Cir. 2004) (citations and internal quotation omitted); *accord Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1249 (10th Cir. 2007) ("[T]he proper inquiry is not what [the insurer who issued the group insurance policy] intended a term to signify; rather we consider the 'common and ordinary meaning as a reasonable person in the position of the [plan] participant . . . would have understood the words to mean.'") (quoting *Willard*, 393 F.3d at 1123); *accord Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1318 (10th Cir. 2009).

None of the words used in the Incontestability Clause are defined terms in the Policy. Accordingly, focusing on the common and ordinary meaning of those words, the two-year incontestability period runs when the insured's insurance is "in effect." The Policy has a provision that determines "When Life Insurance Becomes Effective." (AR 38.) This is the provision on which Standard based its decision. (AR 138-39.) Plaintiff does not identify any other provision of the Policy from which to determine when Mrs. Smith's additional life benefit coverage was "in effect." Thus, the Court agrees with Standard that the section of the Policy regarding "When Life Insurance Becomes Effective" contains the operative provisions.

This section has separate provisions for life insurance "subject to [EOI]" and "not subject to [EOI]." (AR 38.) The former provides that coverage "becomes effective on the date we approve your [EOI]." *Id*. (¶ E.1.) The latter provides that coverage becomes effective on a date that depends on whether the insurance is "contributory" or "noncontributory" and, for contributory life insurance (like Mrs. Smith's additional life coverage), the date depends on when the required written application for coverage is made. When an employee applies during the annual enrollment period or open season, "Contributory Life Insurance not subject to [EOI] becomes effective on . . . [t]he beginning of the next plan year following the date you apply." *Id*. (¶ E.2.b.iv.) Plaintiff assumes this is the operative date for Mrs. Smith.

As this discussion makes clear, the application of the Incontestability Clause of the Policy to Plaintiff's claim for benefits cannot be decided in a vacuum, separated from the question of whether Mrs. Smith's additional life insurance coverage was "subject to EOI" or "not subject to EOI." Thus, the Court finds that Plaintiff's effort to bifurcate his Incontestability Claim from contested issues is ineffectual. As presented in his current briefs, Plaintiff bases his position on insurance principles and policy arguments; he does not rely on the terms of the Policy. While the Court expresses no opinion on the ultimate issue of whether Plaintiff is entitled to payment of the additional life coverage benefit that Mrs. Smith applied and paid for, the Court finds no abuse of discretion by Standard in basing its benefit decision as claims administrator on its interpretation of the terms of the Incontestability Clause of the Policy.

**Conclusion**

For the reasons set forth above, the Court finds that the Incontestability Clause of the Policy, standing alone, did not bar the denial of Plaintiff's claim for additional life insurance coverage.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment Against Standard Insurance Company on His Second Claim for Relief [Doc. No. 37] is DENIED.

IT IS FURTHER ORDERED that pursuant to the Scheduling Order [Doc. No. 34], the parties shall file their Joint Motion for a Second Scheduling Order, regarding a second phase of briefing on Plaintiff's remaining claims, within 7 days from the date of this Order.

IT IS SO ORDERED this 2nd day of February, 2018.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE