IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREGORY SMITH,  )  )             Plaintiff,  )  )  v.  )  )  STANDARD LIFE INSURANCE  )  COMPANY, *et al.*,  )  )             Defendants.  ) | Case No. CIV-15-1126-D |

**O R D E R**

Before the Court is Plaintiff's Motion to Tax Attorney's Fees and Litigation Costs [Doc. No. 92], filed under Fed. R. Civ. P. 54(d)(2). Plaintiff seeks an award of attorney fees and expenses pursuant to 29 U.S.C. § 1132(g)(1) and *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242 (2010), based on Defendants' conduct during this ERISA litigation that resulted in a dismissal of the case under the mootness doctrine. *See* Mem. Decision [Doc. No. 89]. That is, Defendant Carlisle Corporation ("Carlisle") obtained from Defendant Standard Life Insurance Company ("Standard") a retroactive amendment of the group life insurance policy governing Plaintiff's ERISA claim that caused Standard to pay the claim.

Plaintiff's Motion was timely filed after entry of the Judgment, and Defendants responded [Doc. Nos. 96, 97]. However, the Court then authorized limited discovery and further briefing, which has been completed. *See* Pl.'s Am. Suppl. Br. [Doc. No. 118];

Carlisle's Suppl. Resp. Br. [Doc. No. 119]; Standard's Suppl. Resp. Br. [Doc. No. 120]; Pl.'s Reply Br. [Doc. No. 123]. The Motion is now ripe for decision.[1]

### A.     Standard of Decision for ERISA Attorney Fees

Plaintiff seeks to recover an award of attorney fees under ERISA, which authorizes a "court in its discretion [to] allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "A fee claimant need not be a prevailing party to be eligible for an award of attorney's fees and costs under ERISA." *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013). Instead, a district court may award attorney fees under § 1132(g)(1) "as long as the fee claimant has achieved 'some degree of success on the merits.'" *Id.* (quoting *Hardt*, 560 U.S. at 245). If the claimant demonstrates such success, and so becomes eligible for an award of fees, the court of appeals "has established five factors a court may consider in deciding whether to exercise its discretion" to make an award:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.*[2] In this case, the parties disagree on both issues of whether Plaintiff is eligible for an award and whether these five factors weigh in his favor and warrant an award.

---

[1] Carlisle questions continuing jurisdiction, but where subject matter jurisdiction over a case exists, "[a] claim for attorneys' fees may remain viable even after the underlying cause of action becomes moot." *See Schell v. OXY USA Inc.*, 814 F.3d 1107, 1124 (10th Cir. 2016).

[2] Although the Supreme Court declined in *Hardt* to adopt these factors as required by § 1132(g)(1), the Court did "not foreclose the possibility that once a claimant has satisfied this

## B.   Some Degree of Success on the Merits

Plaintiff recognizes that, as a threshold matter, he must show "some degree of success on the merits," and he endeavors to make this showing by presenting evidence that this lawsuit was a catalyst for Defendants' amendment of the group life insurance policy. *See* Pl.'s Mot. at 1, 2-3.   Plaintiff argues that he can "satisfy the *Hardt* standard if, despite failing to obtain a judgment or even a single ruling in his favor, his 'litigation activity pressured a defendant to settle or render to a plaintiff the requested relief.'" *Id.* at 2 (quoting *Templin v. Independence Blue Cross*, 785 F.3d 861, 866 (3d Cir. 2015); emphasis omitted).   Defendants dispute that 1) Plaintiff's catalyst theory is a viable means of showing success on the merits and 2) the decision to amend the group policy was causally connected to this lawsuit.

### 1.   Legal Standard

In adopting the "some success on the merits" standard in *Hardt*, the Supreme Court stated that "[a] claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victory, but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue." *Hardt*, 560 U.S. at 255 (internal quotations omitted).[3]   Following *Hardt*,

---

requirement [of some success on the merits], and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors . . . in deciding whether to award attorney's fees." *Hardt*, 560 U.S. at 255 n.8.

  [3]   The plaintiff in *Hardt* achieved success by obtaining an order remanding her ERISA claim to the plan administrator for a statutorily required "full and fair review" and by presenting "compelling evidence" of the claim's merit. *Id.* at 255-56.   Thus, the Court declined to decide

federal appellate courts have generally found that a plaintiff may be eligible for a fee award where his lawsuit served as a catalyst for a voluntary change in the defendant's conduct. *See Templin*, 785 F.3d at 866; *Scarangella v. Group Health, Inc.*, 731 F.3d 146, 155 (2d Cir. 2013); *Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 898 F. Supp. 2d 883, 899-900 (D. M.D. 2012), *aff'd* 541 F. App'x 322 (4th Cir. 2013) (unpublished); *see also Thole v. U.S. Bank, N.A.*, 873 F.3d 617, 631-32 (8th Cir. 2017), *aff'd on other grounds*, 140 S. Ct. 1615 (2020) (recognizing catalyst theory but affirming district court's finding that "plaintiffs failed to produce evidence that their lawsuit was a material contributing factor" in defendants' conduct). According to one appellate court: "To succeed under a catalyst theory of recovery, evidence that *judicial* activity encouraged the defendants to settle is not necessary. All that is necessary is that *litigation* activity pressured a defendant to settle or render to a plaintiff the requested relief." *Templin*, 785 F.3d at 866 (emphasis in original). Another court has stated a narrower view that the defendant's voluntary action or settlement must have been "caused in some way by court action." *Scarangella*, 731 F.3d at 154.

Although the Tenth Circuit has not spoken on the issue, the consensus of federal courts is that an ERISA plaintiff may use a catalyst theory to satisfy the *Hardt* standard. Further, the Supreme Court adopted in *Hardt* the standard established in *Ruckelshaus v.*

---

"whether a remand order, without more, constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees under § 1132(g)(1)." *Id.* at 256. "Most courts considering the question left unanswered in *Hardt* have held that a remand order to the plan administrator for review of a claimant's entitlement to benefits . . . is sufficient success on the merits to establish eligibility for fees under section 1132(g)(1)." *Gross v. Sun Life Assur. Co.*, 763 F.3d 73, 77 (1st Cir. 2014) (collecting cases).

4

*Sierra Club*, 463 U.S. 680, 694 (1983), for federal fee-shifting statutes that do not require prevailing party status. Federal appellate courts applying the *Ruckelshaus* standard, including the Tenth Circuit, have recognized the catalyst theory of recovering attorney fees. *See*, *e.g.*, *Ctr. for Biological Diversity v. Norton*, 262 F.3d 1077, 1080-81 (10th Cir. 2001) (applying catalyst test to fee request under Endangered Species Act); *see also Bravos v. EPA*, 324 F.3d 1166, 1170-71 (10th Cir. 2003) (applying catalyst test under Clean Water Act). Under the theory formulated by the Tenth Circuit, a fee claimant can obtain a fee award without an adjudication on the merits by showing that his lawsuit "was the catalyst behind the change in the defendant's conduct," that is, "that the lawsuit is causally linked to securing the relief obtained." *Ctr. for Biological Diversity*, 262 F.3d at 1081 (internal quotation omitted). A causal link can be shown "without establishing that the suit was the only reason" for the change in conduct; instead, the claimant "must demonstrate that its suit was a substantial factor or a significant catalyst prompting the [defendant's] action." *Id.* (internal quotation omitted).[4]

---

[4] The Tenth Circuit's formulation includes a second element that requires the claimant to show the defendant's conduct was required by law. *See id.* This test was adopted long before the Supreme Court's decision in *Hardt*, which distinguished federal fee-shifting statutes that require prevailing-party status from those that do not require it. *See Hardt*, 560 U.S. at 253-54. The Tenth Circuit has not revisited its test since the Supreme Court drew this distinction; in the past, the Tenth Circuit had used its two-part test without regard to whether the applicable statute required prevailing-party status. *Compare Ctr. for Bio. Diversity*, 262 F.3d at 1080 (Endangered Species Act authorizes litigation costs "to any party," 16 U.S.C. § 1540(g)(4)), *with Bravos*, 324 F.3d at 1170 (Clean Water Act authorizes litigation costs "to any prevailing or substantially prevailing party," 33 U.S.C. § 1365(d)). This Court believes a catalyst test that ignores the Supreme Court's categorial distinction between fee statutes is no longer valid, and requiring proof that the relief was required by law is inconsistent with the *Hardt* standard, which requires only "some degree" of success on the merits.

The Court concludes that Plaintiff's request for a fee award should be assessed by applying a catalyst theory. Plaintiff may become eligible to recover an award of attorney fees under § 1132(g)(1) if he shows that this lawsuit caused Defendants to amend the group life insurance policy in order to pay Plaintiff's claim for the insurance benefit sought by his pleading. In framing the issue for decision, the Court declines to adopt a narrow view of the catalyst test that would require Plaintiff to show Defendants' conduct was spurred by judicial action in this case. The Court is persuaded by the reasoning of courts that have concluded a plaintiff may demonstrate success on the merits, and thus satisfy the *Hardt* standard, by showing he achieved a favorable outcome without court action. *See Templin*, 785 F.3d at 866 ("To hold otherwise ignores the distinction the Supreme Court drew in *Hardt* between statutes that award fees only to a prevailing party (which require some type of judicial action for an award of fees) and statutes, like ERISA, that do not limit the award in such a way. . . . Nothing in *Hardt* requires that this [some degree of] success be the result of a judicial decision."); *see Feldman's*, 898 F. Supp. 3d at 906 ("At its core the *Ruckelshaus* standard is a lenient one, designed primarily to ensure that a party that achieves no success whatsoever on its claims receives no fees.").

## 2.     Application

Plaintiff's quest to make the factual showing of causation required by his catalyst theory was the subject of post-judgment discovery authorized by the Court for this limited purpose.[5]  *See* 12/6/19 Order [Doc. No. 101]. Plaintiff submits with his supplemental

---

[5] At the time of Plaintiff's Motion, the sole factual support for his theory was that the benefit payments were tendered to his counsel rather than directly to Plaintiff. *See* Pl.'s Mot. at 3.

6

brief documents produced by Standard and a transcript of deposition testimony given by Carlisle's representative, Mike Roberson, that show an exchange of communications between Carlisle and Standard that led to a retroactive amendment of the group policy and Standard's payment to Plaintiff of the life insurance benefit sought in this case. Both the substance of the communications and the timing of events lead to a firm conclusion that one purpose of the policy amendment was to resolve Plaintiff's claim and that this lawsuit was a substantial factor or significant catalyst prompting the amendment.

To place this finding in context, recall the undisputed facts stated in the Court's first summary judgment order. *See* 2/2/18 Order [Doc. No. 51] at 4-7. Standard denied coverage of Plaintiff's claim to be paid an additional, contributory life insurance benefit for which his wife was eligible under Carlisle's ERISA plan and in which she elected to participate in 2012. The plan was funded by a group life insurance policy that Carlisle purchased from Standard, and premiums for the insurance benefit were regularly deducted from Mrs. Smith's paycheck by Carlisle and forwarded to Standard for almost three years. After Mrs. Smith died and Plaintiff submitted a claim, however, Standard took the position that Mrs. Smith had no coverage because she did not properly complete the enrollment process in 2012; Standard said she failed to provide "Evidence of Insurability" or EOI as required by the policy.

---

Plaintiff asserted that "discovery into the Defendants' internal processes and negotiations that resulted in the payments" was needed to "determine whether there was a cause/effect relationship between this litigation and the Defendants' joint actions that resulted in the [payments]." *Id*.

7

Plaintiff exhausted the administrative process without success and then filed suit in 2015, asserting multiple theories of recovery. The parties elected, and the Court agreed, to proceed with the litigation in stages. Under the bifurcated process utilized in the case, only one theory of liability was decided before Defendants amended the group policy in 2018 and paid Plaintiff the full amount of the benefit (plus interest) sought by his pleading.

Carlisle has taken the position from the beginning of the case, and throughout its briefing of various issues, that Plaintiff was entitled to the benefit for which his wife enrolled and paid, that Standard should pay the claim, and that Carlisle did nothing wrong. *See*, *e.g.*, Carlisle's Mot. Dismiss [Doc. No. 16] at 2, 6-7. However, Carlisle admittedly also was an ERISA fiduciary, and Carlisle was the first to propose that the case proceed in stages, with issues related to Plaintiff's benefit claim being decided before alternate theories under which Carlisle had more direct exposure to potential liability. *See* Carlisle's Reply Br. Mot. Dismiss [Doc. No. 21] at 5-6. Further, as shown by Plaintiff's evidence, this lawsuit caused Carlisle (acting through Mr. Roberson) to inform Standard (through its counsel) that Defendants needed to investigate and, if warranted, correct the administrative problem identified by Plaintiff, where an employee might not be properly enrolled in contributory coverage under the group policy but the error could go undetected until a claim was made.

Mr. Roberson initiated this discussion in March 2016, soon after the briefing was completed on Defendants' Rule 12(b) motions for dismissal, which were later denied. During the first stage of the litigation under the case management plan, Plaintiff (supported by Carlisle) sought insurance coverage based on an incontestability clause of the policy.

8

This stage was completed February 2, 2018, when the Court denied Plaintiff's motion for summary judgment on this issue. The parties then proceeded with a second stage by submitting briefs regarding Plaintiff's benefit claim, to obtain judicial review of Standard's EOI-based denial of coverage. This briefing was completed on June 20, 2018. *See* Pl.'s Reply Brs. [Doc. Nos. 64, 65]. Defendants implemented in July 2018 the solution they had finally settled on – a class-based, retroactive amendment of the policy that would prevent a labor-intensive manual audit of Carlisle's payroll records and would result in payment of Plaintiff's claim (and perhaps one other).[6] In addition to the timing and substance of Defendants' communications regarding the administrative issue raised by Plaintiff's lawsuit, a finding that the amendment was motivated, in part, by Defendants' intent to resolve Plaintiff's claim can be inferred from the fact that Standard voluntarily issued a second benefit check to Plaintiff after his counsel complained that the first check was insufficient to satisfy his claim.

Although Defendants resist a finding that Plaintiff's lawsuit and the policy amendment were causally connected, neither presents evidence that refutes it.[7] Carlisle

---

[6] Although several classes of employees were affected by the amendment, coverage was retroactive to January 1, 2012, only for individuals (like Mrs. Smith) employed by Carlisle Food Service Products. *See* Pl.'s Suppl. Br., Ex. 4 [Doc. No. 118-4] at 58 (ECF page numbering) ("Request for Group Ins. Amendment" prepared by Standard and executed by Carlisle).

[7] Both Defendants instead contend Plaintiff's lawsuit merely raised an administrative issue that was resolved by the amendment without regard to any effect on the litigation. Carlisle allegedly was concerned about "a systemic problem with missing EOI at Standard;" Standard says it was simply "assist[ing] Carlisle to determine the extent of the administrative problem it faced as the plan administrator." *See* Carlisle's Suppl. Resp. Br. [Doc. No. 119] at 3; *See* Standard's Suppl. Resp. Br. [Doc. No. 120] at 9. These arguments actually make Plaintiff's point that his claim implicated Defendants' fiduciary duties under ERISA to properly administer the plan. Carlisle had assured employees participating in its payroll deduction program of coverage for

discusses a declaration of Mr. Roberson regarding the amendment that was submitted at an earlier point in the case and revised during post-judgment discovery. Carlisle reluctantly admits that Mr. Roberson was mistaken and uninformed about relevant facts, and explains in its brief that the Carlisle employee primarily involved in the amendment – its director of benefits and human resources, Sheree Fox – apparently did not provide complete or accurate information to Mr. Roberson and Carlisle's litigation counsel when answering interrogatories and responding to Plaintiff's requests for documents.[8] In providing its explanation and relating its version of events, Carlisle states factual allegations in narrative fashion in its brief without evidentiary support. The record evidence on which Carlisle relies to argue there was no causal link between the amendment and Plaintiff's claim are conclusory statements in Mr. Roberson's revised declaration that are not based on personal knowledge and that the Court finds to be insufficient for this purpose. *See* Roberson Am. Decl. [Doc. No. 115-1] (relating conversations with Ms. Fox and facts that "appear" from documents produced by Standard).

Standard largely dismisses Plaintiff's arguments as "hyperbole" and "speculation" and points to Carlisle as the party with exposure to claims of ERISA plan participants and

---

contributory benefits that, without the amendment, Standard could deny had ever existed. Further, neither Defendant addresses the fact that they were careful to assure the amendment would provide retroactive coverage of Plaintiff's claim with only a minimal effect, if any, on other outstanding claims – a sure sign that resolving his claim was one purpose of the amendment that Defendants devised.

[8] Ms. Fox reportedly was terminated while the parties were planning Rule 30(b)(6) depositions in this case. She was not deposed and did not provide a sworn affidavit or declaration, except by verification of some of Carlisle's interrogatory answers (the accuracy of which may now be in doubt). *See* Pl.'s Suppl. Br., Ex. 1 [Doc. No. 118-1] at 13 (ECF page numbering).

beneficiaries like Plaintiff. *See* Standard's Suppl. Resp. Br. [Doc. No. 120] at 2-3, 10 (quoting interrogatory answer that "Carlisle, as the plan administrator, was obligated to ensure that enrollees submitted [EOI] as required by the plan"). Finger pointing aside, the Court finds that Plaintiff may well have prevailed on an alternate theory of liability if Defendants had not forestalled a decision by effecting a retroactive amendment of the policy that would result in payment of Plaintiff's claim. Clearly, Plaintiff achieved more than a trivial or procedural victory; he obtained a full recovery of the relief he sought in this lawsuit, rendering the case moot.

### 3. Conclusion

Under the circumstances shown by the case record, the Court finds that Plaintiff has shown some success on the merits of his claims as required by *Hardt* and, therefore, he is eligible to recover an attorney fee under § 1132(g)(1).

## C. Exercise of Judicial Discretion

Having found that Plaintiff has achieved some degree of success on the merits, the Court must still decide whether to exercise its discretion to grant Plaintiff a fee award. The parties agree that this decision is guided by five factors endorsed by the Tenth Circuit.

### 1. Defendants' culpability or bad faith

Plaintiff asserts that Defendants have acted in bad faith during this litigation. He points primarily to the facts that Defendants did not voluntarily disclose the circumstances surrounding the amendment of the group life insurance policy and resisted discovery regarding those circumstances, and that Mr. Roberson provided incorrect information in his first declaration and remained reticent when he submitted a second, revised declaration.

11

Plaintiff accuses Defendants (and presumably their attorneys) of manipulating the available information, presenting a "false narrative," and misrepresenting facts in their arguments.[9] *See* Pl.'s Suppl. Br. at 23-25; Pl.'s Reply Br. at 3-4. Plaintiff contends a finding of bad faith is warranted where, as here, Defendants have "continue[d] to 'defend to the death the indefensible.'" *See* Pl.'s Reply Br. at 4 (quoting *McLendon v. Cont'l Grp., Inc.*, 749 F. Supp. 582, 611 (D.N.J. 1989)). Defendants disagree that litigation conduct can be used to establish bad faith under the five-factor analysis, and that any bad faith conduct has been shown. *See* Carlisle's Suppl. Resp. Br. at 23.

Assuming, without deciding, that bad faith litigation conduct may provide a proper basis for a fee award, the Court is not persuaded that Defendants engaged in culpable or bad faith conduct. Plaintiff views as suspicious, or even disingenuous, Defendants' effort to deny that this lawsuit played a significant part in the policy amendment, but the Court finds Defendants' conduct simply reflects a fundamental difference of opinion between the litigants. Although the Court ultimately found in Plaintiff's favor on this issue, as discussed *supra*, the Court cannot comfortably say that Defendants engaged in either "misdirect[ion]" or "affirmative misrepresentation" and falsity, or that their litigation behavior after Standard disclosed the policy amendment "is awash with dishonesty of purpose," as argued by Plaintiff. *See* Pl.'s Suppl. Br. at 24-25 (quotation omitted). The

---

[9] Plaintiff also suggests Defendants' attorneys acted improperly during Mr. Roberson's deposition by interposing objections to prevent Plaintiff's counsel from conducting a full examination and by directing Mr. Roberson not to answer questions that Carlisle's counsel unilaterally declared to be outside the scope of the Rule 30(b)(6) deposition notice. *See* Pl.'s Suppl. Br. at 9 & n.4. However, Plaintiff does not rely on this alleged misconduct to show that Defendants acted in bad faith. *Id.* at 21-25.

12

Court's rejection of Defendants' view does not mean it was taken in bad faith, and the evidence on which Plaintiff relies to establish that Defendants acted in bad faith does not lead the Court to make the same inferences or reach the same conclusion as Plaintiff.

Therefore, the Court finds that the first factor weighs against allowing Plaintiff to recover his attorney fees from Defendants.

### 2. Defendants' ability to satisfy an award of fees

It is undisputed that Defendants are capable of paying an award in the total amount sought by Plaintiff's Motion and Supplement, that is, attorney fees of $235,810.00 and costs of $244.95. *See* Pl.'s Suppl. Br. at 28. Thus, this factor weighs in favor of an award to Plaintiff, but it is insufficient standing alone to justify a fee award. *See Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013) ("No single factor is dispositive and a court need not consider every factor in every case.")

### 3. Deterrence of others from acting under similar circumstances

Plaintiff contends that granting him a fee award would avoid the use of a "procedural model" by "Standard and other ERISA insurers" like the one allegedly employed in this case, where a claim is denied and litigated and then paid "midstream" (with "a modicum of prejudgment interest)" in order to "dispense of the case with little (or no) risk of having to pay the participant's attorneys' fees as provided by ERISA." *See* Pl.'s Mot. at 5. Again, Defendants dispute that deterring similar litigation conduct – as opposed to conduct during the administration of an ERISA plan or an ERISA claim – is a proper focus of the relevant inquiry. *See* Standard's Resp. Br. at 8-9.

13

Assuming again, without deciding, that deterring litigation conduct is a proper consideration, the Court is not persuaded that Defendants' conduct provides a sufficient basis for a fee award. The developments in this case were unprecedented in the Court's experience, and thus, the Court doubts a similar litigation strategy is likely to recur. Even if one assumes that Defendants are at the forefront of a new strategy for future ERISA cases, the Court has rejected Plaintiff's view that Defendants engaged in bad faith litigation conduct, and this view provides the basis for Plaintiff's argument that deterrence is necessary or appropriate. *See* Pl.'s Suppl. Br. at 26.

Therefore, the Court finds that the third factor does not weigh in favor of shifting Plaintiff's litigation costs to Defendants.

### 4.   Plaintiff's effort to benefit all plan participants and beneficiaries or to resolve a significant legal question regarding ERISA

Plaintiff candidly admits he did not intend to benefit others by filing suit, and he reluctantly concedes in his supplemental brief that this factor does not truly weigh in his favor. *See* Pl.'s Mot. at 6; Pl.'s Suppl. Br. at 27. Plaintiff's position regarding the catalyst theory – that the policy amendment was designed to affect this lawsuit – is inconsistent with a finding that Plaintiff achieved a benefit for other plan participants or beneficiaries. Having accepted Plaintiff's view that this lawsuit was a catalyst for a retroactive amendment of the policy to benefit only him, the Court finds that this factor weighs against a fee award to Plaintiff.

14

### 5. Relative merits of the parties' positions

Plaintiff "suggests that this [merits-based] factor is of minimal consequence" in a case such as this, where he "is not the prevailing party in a traditional sense" but achieved some success on the merits without judicial action. *See* Pl.'s Mot. at 7. If this factor is considered, however, Plaintiff proposes that the Court undertake "the difficult task of finely parsing pleadings and [its] own orders to identify even miniscule advantages in the merits arguments of the parties and to weigh them, perhaps one issue at a time, to determine which of the parties had the better of it, overall, even to a very slight degree." *Id.* Responding to Carlisle's effort to tally victories on individual issues, Plaintiff urges the Court to find that he earned the highest score. *See* Pl.'s Suppl. Br. at 27-28.

Upon consideration, the Court finds it difficult to evaluate a merits-based factor under the circumstance presented and, therefore, finds this factor to be neutral. This case was not resolved on the merits, except to the extent success is measured by Plaintiff's receipt of the benefit he sought. Even viewing this as a victory for Plaintiff, the total amount of Standard's payments to Plaintiff fell far short of the compensation he sought when adding prejudgment interest to the benefit claim, and the Court's mootness ruling represents a sound defeat for Plaintiff (who advocated a 15% rate but received 2% interest). Plaintiff has already declared his intent to appeal this ruling and to continue litigating any outstanding issues. *See* Order Determ. Tolling [Doc. No. 94].

By the Court's account, any attempt to assess the relative merits of the parties' positions on subsidiary issues would end in a draw. Plaintiff's alternate theories of recovery were not dismissed and remained pending when the case ended, but he received

an adverse summary judgment ruling on a key theory. Plaintiff received payment for his benefit claim, but the Court rejected his position on prejudgment interest. Examining the course of the litigation as a whole, there was no clear winner or loser. Therefore, the Court finds that the fifth factor favors neither party.

**D.     Conclusion**

Applying the five factors enumerated in *Gordon v. United States Steel Corp.*, 724 F.2d 106 (10th Cir. 1983), the Court finds that a fee award to Plaintiff is not warranted in this case. The Court is mindful of the court of appeals' guidance that the *Gordon* factors are not exclusive or dispositive; "the five *Gordon* factors are merely guidelines." *See McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1209 n.17 (10th Cir. 1992). However, Plaintiff advocates no other factor for consideration, and the Court finds no principled way to conclude that Plaintiff's attorney fees should be borne by Defendants. Thus, the Court declines to grant Plaintiff's request for an award of attorney fees and costs.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Tax Attorney's Fees and Litigation Costs [Doc. No. 92] is DENIED.

IT IS SO ORDERED this 2nd day of October, 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge